IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS VICHIO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 8063 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| US FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Vichio has brought a two count complaint against his former employer, defendant US Foods, Inc., alleging that his employment was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(c). In count II he seeks liquidated damages under 29 U.S.C. 626(b), claiming that defendant's alleged discrimination was a willful violation of the act. Defendant has moved for summary judgment under Fed. R. Civ. 56. Plaintiff has moved to strike defendant's reply brief and to deem admitted the facts asserted in his Local Rule ("L.R.") 56.1 statement of additional facts. For the reasons described below, plaintiff's motion to strike is denied and defendant's motion for summary judgment is granted.

## BACKGROUND

Defendant is a food and foodservice distributor, providing food and service-related supplies to restaurants and other customers across the country. Plaintiff worked for defendant as a Night Warehouse Supervisor at defendant's distribution center in Bensenville, Illinois from March 18, 2013, until his termination on October 26, 2017.

Defendant serves its customers through a series of distribution centers, or warehouses, where available products are stored, packaged, and shipped as ordered. Defendant employs hourly employees called "Selectors" at its warehouses who are responsible for preparing pallets of customer orders that will be loaded onto trucks and then shipped. The Selectors pick products stored in various areas of the warehouse based on the customer orders, package the products into cases and pallets, and stack the pallets on the docks according to defendant's procedures.

The Selectors report to the Night Warehouse Supervisors, who are the first line managers responsible for their development through training, coaching, and other supervision. The Night Warehouse Supervisors oversee night warehouse operations and personnel to ensure the safe and efficient preparation of product delivery to customers, including directing the Selectors to accurately pick and package customer orders. The Supervisors are expected to contribute to meeting targets by auditing pallets that have been stacked on the loading dock to determine if a Selector accurately and completely picked the products ordered, as well as assessing whether the Selector correctly stacked the products, cases, and pallets. Supervisors are tasked with requiring the Selectors to fix mistakes and to coach Selectors on how to avoid errors. Each Night Warehouse Supervisor is typically responsible for overseeing the selection in a particular area of the warehouse, such as the cooler, dry area, freezer, or dock. They report directly to the Night Warehouse Manager. Plaintiff was typically assigned to the cooler area.

On January 16, 2017, defendant hired Chuck Zadlo as the Vice President of Operations. In that role, he was responsible for the entire operation of the Bensenville warehouse. He was 37 years old at the time he was hired. He directly supervised Fred Hunter (age 48), Director of Operations who, in turn, supervised Mark Delhaye (age 54), who was Night Warehouse Manager.

2

Delhaye supervised the four Night Warehouse Supervisors from January 2017 until December 2017. Those Supervisors were plaintiff until his termination (age 54), Roger Reis (age 47), Ola Oronsaye (age 58), and Robert Cline (age 61).

Zadlo has testified that within the first month of his tenure he asked Hunter to rank by performance where the Night Supervisors landed. He recalls Hunter telling him that plaintiff was at the lower end of the performance spectrum, based predominantly on plaintiff's conduct and behavior with his peers. According to Zadlo, plaintiff would make comments about waiting to get fired or that he was waiting for his son to earn a major league baseball contract, and then he would quit. According to Zadlo, Delhaye told him the same thing. Zadlo met individually with each of the Night Supervisors in January 2017. Zadlo testified that plaintiff told him that he (plaintiff) was not going to be around very long because his son was going to sign a major league baseball contract. That comment struck Zadlo as an odd thing to say in a first meeting with the vice president of operations. Plaintiff denies making this comment and testified that they simply spoke about Zadlo being a Cub fan while plaintiff is a Sox fan.

Despite Hunter's ranking of plaintiff at the low end of the performance spectrum, plaintiff received favorable reviews for the years 2013 thorough 2016. Indeed, in 2016 Hunter rated plaintiff's 2015 performance as "Exceeds Expectations" in all but two categories and rated plaintiff as "Fully Meets Expectations" in the other two. The overall rating was "Exceeds Expectations." Delhaye, plaintiff's immediate supervisor gave plaintiff similar midyear reviews. Despite these favorable reviews, there were some indications that plaintiff's performance was waning. In plaintiff's 2015 year-end review Hunter also indicated that "Nicholas thinks that he's achieve [sic] excellence simply by completing a job as quick as possible . . . In an effort to

complete the job as quick as possible, he overlooks important details and makes mistakes . . . although it's on time, a flawed job is not acceptable performance."   Plaintiff rated himself as "Partially Meets Expectations" in the "Drive Performance Management and Employee Development" and Personal Excellence" categories.   By December 2016 Delhaye rated plaintiff's performance as "Developing" in five of nine categories and overall, indicating that plaintiff needed to "work on improving processes and being involved in the improvement, not just challenging current methods" and that plaintiff needed to "team up with management in regards to functions beyond daily functions ie [sic] on-boarding new employees."

  Eventually, In March 2017 Zadlo, in consultation with Hunter and Peg Kautz from Human Relations, decided that plaintiff should be placed on a 30-60-90 day performance improvement plan ("PIP") for not meeting performance expectations.   Despite additional training, Zadlo, Hunter, and Delhaye continued to believe that plaintiff continued to display a negative attitude that affected his and other warehouse employees' productivity.   On June 19, 2017 Delhaye issued plaintiff a written memorandum titled "2017 Individual Development Objectives."   The memorandum was based on an outline provided by Zadlo and informed plaintiff that he had not met performance expectations over the past three months, identifying areas that needed improvement.   Plaintiff testified that when he received this memorandum he knew it was "the beginning of his demise" because he was not doing anything wrong.   He testified that after receiving the memo he basically continued doing what he always did but would speak with Delhaye to ensure that he was performing as required.

4

Zadlo, Kautz and Hunter ultimately concluded that plaintiff had not improved his performance as expected and on July 27, 2017 Delhaye issued plaintiff the formal 90 day PIP at Zadlo's direction. The PIP identified three areas that needed improvement: 1) "Does not drive accountability of associates"; 2) "does not deliver results"; and (3) "does not exhibit leadership or positive attitude. At the end of the 90 day PIP, Zadlo (age 37), Hunter (age 48) and Kautz (age 58) concluded that plaintiff had failed to improve and decided to terminate his employment.

## DISCUSSION

Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchison v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 892 F.3d 887, 893 (7th Cir. 2018).

**Local Rule 56.1**

As a preliminary matter, both plaintiff's and defendant's summary judgment pleadings violate Local Rule 56.1. Local Rule 56.1 is intended to simplify matters and make the court's job "easier," Portis v. City of Chi, 510 F.Supp.2d 461, 463 (N.D. Ill. 2007), by "identify[ing] for the court the evidence supporting a party's factual assertions in an organized manner." Aberman v.

5

Bd. of Edu. of City of Chi., 242 F.Supp.3d 672, 676 (N.D. Ill. 2017). In this case, it appears that the parties, particularly plaintiff, "intended to complicate rather than simplify the court's task." Portis, 510 F.Supp.2d at 463.

For example, plaintiff quibbles over facts that should be straightforward admissions or denials. Plaintiff filed a lengthy response to defendant's statement of facts that includes detailed legal arguments that have no place in a Local Rule 56.1 statement. See Aberman, 242 F.Supp.3d at 676 (Local Rule 56.1 statement "is not intended as a forum for factual or legal argument"). Indeed, some of plaintiff's responses to simple assertions of facts are over a page long, with one such response over 15 pages long containing 53 bullet points of improper additional evidence. In addition to his response, Plaintiff filed a motion to strike certain portions of defendant's Local Rule 56.1 response to plaintiff's statement of additional facts as containing argument with no record citations. Given plaintiff's own failure to comply with the Local Rule, he is in no position to complain about defendant's failure. The motion to strike does little to advance plaintiffs' position and serves to complicate rather than simplify. Although the court declines to strike the inappropriate portions of both parties' Local Rule 56.1 statements and declines to treat improper denials as admissions, the court will consider the Local Rule 56.1 statements only to the extent they are supported by the record and comply with the Local Rule.

Plaintiff has also moved to strike defendant's reply brief, arguing that it contradicts the testimony of its own Fed. R. Civ. P. 30(b)(6) witness, and raises new arguments not properly raised in reply. Plaintiff is correct that "[r]eply briefs are for replying." Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc., 249 F.R. D. 530, 536 (N.D. 2008). Plaintiff is incorrect, however, in arguing that the reply brief raises new arguments. Instead, it directly attacks

6

arguments and evidence that plaintiff presented in his response brief, citing record evidence when appropriate and pointing out where plaintiff's argument is unsupported by the record, or is immaterial to the issue before the court. Consequently, plaintiff's motion to strike is denied.

**Summary Judgment Motion**

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The "relevant standard under the ADEA is whether age was the 'but for' cause of the allegedly discriminatory employment action." Igasaki v. Illinois Department of Financial and Professional Regulation, 988 F.3d 948, 960 (7th Cir. 2021). At the summary judgment stage, the analytical approach of an ADEA case is similar to that of a Title VII case. Id. The singular question that matters is "[w]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016). The "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." Id.

As with Title VII, an ADEA plaintiff can defend a summary judgment motion by proceeding through the now familiar burden shifting framework adapted from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, plaintiff must come forward with evidence showing that: 1) he is a member of the protected class (over 40 years of age); 2) he was meeting defendant's legitimate expectations; 3) suffered an adverse employment action; and 4) a similarly situated employee who was not a member of the protected class was treated more favorably. Carson v. Lake County, Ind., 865 F.3d 526, 533 (7th Cir. 2017). If plaintiff

establishes this prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to plaintiff to submit evidence that defendant's explanation is pretextual. Id.

Alternatively, plaintiff may proceed under the holistic approach discussed in Ortiz. Under this approach, the court must determine whether the evidence would permit a reasonable factfinder to conclude that plaintiff's age caused his termination. Indeed, whichever method is used, "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." Bass v. Joliet Public School Dist. No. 86, 746 F.3d 835, 840 (7th Cir. 2014).

In the instant case, the answer to that fundamental question is no. Because it is unclear which method plaintiff is attempting to use, the court analyzes the evidence under both approaches. First, under McDonnell Douglas, plaintiff is a member of the protected class, was terminated, and was replaced by someone substantially younger. There is little evidence, however, that he was satisfying defendant's legitimate expectations. Plaintiff focusses on his reviews prior to Zadlo joining the company, but it is his reviews at the time of his discharge that determine whether he was meeting expectations. See Zayas v. Rockford Memorial Hospital, 740 F.3d 1154, 1158 (7th Cir 2014) ("The question is not whether [plaintiff] *ever* satisfied the [defendant's] expectations, but whether [he] met the [defendant's] expectations at the time [he] was fired.") (emphasis in original). And, even those prior reviews, while good, suggested that he needed to improve in areas, continually indicating that he either refused to do what was asked, or simply could not comply.

It is true, as plaintiff argues, that his prior boss considered him to be an exemplary worker and there is some evidence that his immediate supervisor did not necessarily agree with the decision to terminate him. But even if this is enough to satisfy his prima facie case, there is no evidence that Zadlo's decision to terminate him was a pretext for age discrimination. Zadlo testified that he did not know plaintiff's age. All of the Night Warehouse Supervisors were around plaintiff's age. Of the four, two were older than plaintiff and one was younger. Cline was the oldest at 61, seven years older than plaintiff, and Oronsaye was 58, four years older than plaintiff. Cline was put on the identical PIP as plaintiff but improved his performance, was not terminated, and continued to be employed by defendant. This does not support any inference that Zadlo's decision was based on plaintiff's age. To the contrary, if Zadlo was guided by ageist discrimination, he would have terminated the two employees older than plaintiff.

Plaintiff's only evidence of age discrimination is that he was replaced with someone over ten years younger. The Seventh Circuit considers this age differential to be presumptively "substantial." Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997). But that means only that plaintiff can establish a prima facie case, assuming he meets the other criteria. Id. Ultimately, he must prove that he was terminated because of his age, and he has no other evidence to meet that burden. The only other evidence that is even remotely related to age, is an email from defendant's recruiter, Nicole Harris of Michael Page International, indicating that a potential candidate was "more on the seasoned side," which she admitted meant later on in his career, and potentially a negative characterisitic. She did not know the candidate's age but was referring to his experience. Plaintiff argues that Harris testified that defendant used age as a criteria, but he is either incorrect or trying to intentionally mislead the court. In fact, she testified that she could not

9

recall anyone ever saying anything to her that indicated that defendant used age as a criteria. In any event, Harris's email cannot be attributed to defendant, even if she could be considered defendant's agent as plaintiff argues. "Generally speaking, comments by a non-decision maker do not suffice as evidence of discriminatory intent." Luvas v. Chicago Transit Auth., 367 F.3d 714, 730 (7th Cir. 2004). And Harris testified that she had no influence whatever as to defendant's ultimate choice of who to hire.

In short, there is simply no evidence in the record from which a reasonable jury could conclude that plaintiff's age was the reason for his termination. Aside from hiring someone ten years younger (and paying him significantly more than plaintiff), there is no evidence that defendant treated younger workers more favorably. In fact, the evidence is just the opposite. Consequently, defendant's motion for summary judgment is granted.

## CONCLUSION

For the reasons described above, plaintiff's motion to strike [Doc. 135] is denied. Defendant's motion for summary judgment [Doc. 120] is granted.

**ENTER:**

_[signature]_
**Robert W. Gettleman**
**United States District Judge**

**DATE: January 5, 2022**